EDWARD TAYLOR v. THE NEW YORK AND LONG BRANCH RAILROAD COMPANY.

After damages have been assessed on a condemnation of land for a railroad, the trees, which may be useful in the construction of the road, standing on the tract taken, become the property of the company.

On case certified from the Monmouth County Circuit Court.

Argued at February Term, 1875, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and KNAPP.

For the plaintiff, *William H. Vredenburgh.*

For the defendant, *Applegate.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The plaintiff was the owner of a tract of land over which the road of the defendant was laid. The parties failing to agree, commissioners were appointed to assess the value of the land and damages. Some time after this ascertainment, and before the money so awarded had been paid, the plaintiff cut down a number of trees standing on the premises comprised in the roadway. Subsequently the company paid the money in question, entered upon the premises, and appropriated to their own use the trees thus felled. For that conversion this suit was brought.

It was contended, on the argument, that when this timber was cut the railroad company had no title to the land upon which it stood, and that the owner of the land, until the money assessed to him was paid, had the right to use it as he pleased. This position, I think, cannot be sustained. The charter of this defendant, like those of most other companies of the same class, declares, "that when the route of said railroad shall have been determined upon, and a survey of the same deposited in the office of the secretary of state, then it shall be lawful for the said company, by its officers, &c., to enter upon, take possession of, hold, have, use, &c., subject to such compensation as hereinafter provided." By a subsequent provision, the amount of this compensation is to be ascertained by commissioners. These clauses, I think, fix the right of the company in the land. After the filing of such survey, and the ascertainment of such compensation, the owner cannot divest, or impair, the interest thus acquired. It is true that this charter, in a provision which is common to all legislative grants of this kind in this state, has prohibited the company from taking possession of the premises until after payment, or tender of the damages, but this regu-

lation does not affect the right antecedently acquired by the filing of the survey and the ascertainment of such damages. Unless this effect is attributed to the initial acts on the part of the company, and the right of the railroad in the land is regarded as established by such acts, this result would ensue : that the land-owner, at any time before the payment of the damages, could encumber the tract taken, or could alter its condition. But, as I have said, the true legal doctrine seems to me to be that already stated, that whatever right the railroad company could acquire in the land, became established in it by the laying of its route, and the filing of its survey, and having the damages legally ascertained.

Thus far with respect to the time of the acquisition of the company's right. The remaining question relates to the extent of such right. In what degree does the right to the timber standing on the tract condemned vest in the corporation ? The legal answer to this query, I think, is, that the railroad company becomes entitled to such timber to the extent that it is useful in the construction of the line of the road. This, by common usage, is the admitted rule with respect to the earth, stone, and other materials taken from the appropriated land ; and it does not seem to me that any very rational discrimination can be made between such substances and trees rooted in the ground. Trees, as much as earth and stones, are part of the land, and pass with the title. When, therefore, the use of the land is transferred by the action of the legislative will, the right to use, for the specified purpose, everything which, in the legal sense, is comprehended in the term land, is transferred. I say the right is given to use such materials for the specified purpose, because it is plain that the grant is a qualified one. The fee in the land is not acquired by the company, but a mere easement in such land. The title remains in the owner, the property being made servient to the purposes of the railroad. But neither the land, nor any of its component parts, its soil, stones, or trees, can be subjected to any greater or other servitude than this. It was therefore correctly held by the Supreme Court of

Rhode Island, (8 *Rhode Island* 554,) in the case of *Aldrich*. v. *Drury*, that it was rightful for a railroad company to use, in the construction of its road, any material acquired in grading, and to remove the same, with such view, to another locality, but that such materials could not be sold to third parties. The qualified right of the company to the use of materials gained by excavations in the land condemned, is illustrated and maintained in the cases of *Chapin* v. *The Sullivan Railroad*, 39 *N. H.* 564 ; and *Henry* v. *The Dubuque and P. R. R.*, 2 *Clarke* (*Iowa*) 288. The doctrine appears, likewise, to have the approval of Chief Justice Redfield. *Redfield on Railways* 247.

The consequence is, the defendant in this case, by the act of locating its route, and filing its survey, and having the damages ascertained, acquired the indefeasible right to the employment of this land, in all its parts and constituents, for the construction of its railway, but it did not acquire the right to employ it for any other object. Therefore, if the trees in question, as they stood upon the ground, could have been used for such purpose, that is, in the building of the road, it was a wrong in the plaintiff to cut them down and convert them to his own use ; but, if they were of no use in the doing of such work ; or, if it was not designed so to use them, he had the right so to appropriate them. As has been said, the plaintiff was the owner of the land, and it was subject to a single servitude ; for all other uses it was still his own. But it must be constantly borne in mind that, in no condition of things, can the railroad company claim a right in the soil or trees, except to make use of them for the special purpose for which it was created ; and if, from any cause, such materials have been made unserviceable for such purpose, its right to them is at an end. This result follows from the circumstance that the title to such materials remains in the owner of the land ; for the company, in any possible posture of affairs, to sell such materials, or to apply them to any but the one use, would be a clear infringement of such proprietary right. If, by the unlawful act of the present plaintiff, the trees in ques-

tion, although originally serviceable in the building of this road, have lost such serviceable quality, the company cannot claim them, or take them from him ; the remedy for such tort is by an action. It would be asburd to permit the defendant to hold the trees converted into wood, for it could not turn them to any account.

The Circuit Court should be advised that, if the wood in question was of a character, and was in such condition when taken possession of by the defendant as to be of service in the making of its road, then, and to that extent, and no farther, the defendant was justified in taking and holding such materials. If only part of such wood answered such description, then the defendant could but measurably justify.